The next matter on our calendar is U.S. v. Terrence Stinson. Good morning. May it please the Court, Anne Berger on behalf of Terrence Stinson. I will rely on our brief as to the second point, the foreclosed issues, and instead an argument I will address point one, the procedural error committed by the District Court when at a 2004-since-vacated sentence as a tool by which to calculate its new sentence, reaching an aggregate sentence of 299 months of imprisonment. The 2004 sentence had— Is it your argument that he had to start from scratch and add up all the different points from the PSR? Yes. Thank you, Judge Poole. That is exactly our point. But we wouldn't require that from him if it was the original first sentencing, would we? At a first sentencing post-Booker, the judge would begin with the calculation of the sentencing guidelines and then assess the 3553A factors. Here, we have the judge fixating throughout the sentencing hearing on a pre-Booker sentence that was— specifically says the opposite. He says, you might say, you know, 622 months, the Supreme Court knocked down that second weapons condition, which is 300 months. Why not just do the math? 622 minus 300 gets you down to 322. And then the District Court says, unfortunately, it's not quite that simple because they sent it back for a full resentencing. And essentially, on a full resentencing, I do it over. So the District Court specifically said, I'm not using the 622 as a starting point. This is a full resentencing. I'm starting over. So he wants to conclude, even though that was what was said, that's not what happened, right? Well, Judge, had it ended there, to go back a step, certainly it made sense for the District Court to describe what had happened that brought everyone to that resentencing. Procedurally, it made sense to explain why everyone was there. But if you go forward, there are additional instances where the District Court returns to this sort of subtraction problem, beginning with the 622. I don't see that. The District Court refers to the prior proceeding, but that always happens at a resentencing, where you talk about what your reasoning was the first time around, what you considered, what may have changed. That doesn't mean that you're using the guidelines from the prior sentence as your starting point. The judge did go back to the original sentencing, but judges always do that when they're resentencing someone, to talk about what they considered the first time, right? Certainly, as a procedural history, it was absolutely relevant. But if we look at the totality of the sentencing hearing, the number of times that the District Court over and over again returned to the 622 months, even the government at one point expressed its concern, and that's at 8-235, where the government says, quote, to simply subtract the 25 years wouldn't be the right calculus, wouldn't be the right way. And the reason I saw that was that wasn't because the government was concerned that the District Court was doing it. The District Court was saying it would be unfair. The District Court was just remembering what the government was asking for, and the District Court said that would be unfair. I just can't subtract the time. And then the government clarified and said, we're not asking you to do that. So it wasn't the government correcting the court. It was the government explaining to the court that it wasn't trying to urge that. So everybody was on the same page. The court said this is a full resentencing. The government said, we agree. Don't just subtract the time. And you want us to conclude otherwise. If we compare the process that the court applied at the original pre-Booker sentencing in 2004 with what happened in 2020, I think it's illustrative of the point that I'm trying to make. And that is, at the 2020 sentencing, it's an hour and seven-minute long sentencing hearing. After its cursory beginning remark at about the ten-minute mark of the hearing, it's almost an hour, or about 80 percent through the entire sentencing proceeding when the District Court returns and, for the first time, tells the parties what its guidelines calculations are. In contrast, we go back to the 2004 sentencing. After dealing with objections to the PSR, a motion to set aside the verdict, the court immediately tells the parties how it reaches its guidelines calculations. And the fact — and the point that I'm trying to make is you need to look at the entirety of the proceeding. I would not be bringing this argument if it was simply a matter of the judge going through a procedural history. But the judge continually, over and over again, returned to the 622 months. And it's problematic not only because it appeared to be the District Court's starting point, an initial benchmark, as opposed to the correctly calculated guidelines range in the sixth revised PSR, but because that number stemmed from an incorrect calculation of the guidelines at the original 2004 sentencing. In addition, it was a sentence — Oh, but the resentencing, the government was looking for an above-guidelines sentence. He denied that. I mean, the sentence that he gave was within the guidelines. So I don't see how — I have a hard time seeing how his adherence to the earlier guidelines calculations skewed it. When he — A, the government wants him to go above it. And he says, no, I'm not going to do that. And then he recites the — he recites the — and the defendant has an indication of changing his life and makes statements. And he says, I've taken that into consideration. And then he focuses, to some degree, on the situation of the crime. He takes into consideration the acquitted conduct, which you raised in your second argument, that you've stepped away from a little bit. And then gives him a sentence that falls within the guidelines, 299 months, right? Well, in terms of — So this guy started out with a 720-month sentence. He ends up with 299. That's half of the 620 you think that the judge somehow couldn't get away from. Well, if we look at the two crack resentencings that occur in the interim, we have the judge beginning with the 720-month aggregate guidelines, the low end of the range in 2004, incorrectly calculated. We then have two subsequent crack resentencings where each time the judge — I understand that. — sentences at the low end. I understand that. But the point is, is that the government was pressing to go to the earlier calculation and say, yeah, I'll go above it. I'm certainly entitled because it's closer to what I gave him before. That's not what he did. Certainly the court could have gone above the range. That's not the point. The point is, if the court intended to give Mr. Stinson the benefit of what went into the process of imposing the original sentence, then he began at an incorrect point. And rather than relying on the guidelines in the PSR — But just to follow up on Judge Wesley, when government urges him to go above the guideline and the judge's response is that would be unfair — Right. — isn't that an indication that he believed that he was focused on the new guideline, not the old guideline, and that he was going to sentence within the new guideline? Isn't that when he says that would be unfair, an indication that he is now focused on that new guideline? Certainly. And that's the initial exchange that Your Honor referred to when the judge talks about essentially making it into a subtraction problem. But the court continually returns to that, continually comes back to that. I mean, there are situations where you see red flags where a judge says something along the lines of, look, I'm reducing your sentence this amount from what it used to be, and then there is some indication potentially that they're factoring in what the sentence, like, used to be and still using that as a starting point. But I read this transcript very carefully. You can point to any comment by the judge that suggested that he was somehow measuring the new sentence based upon what he had done previously. I didn't see that. You can point me to it. I mean, you just keep saying he referenced the 622-622, but — and I actually didn't see that. The government referenced it many times, but — Your Honor, in the brief and the joint appendix, each instance, I believe there were five of them when the court came back to this discussion of the original sentence or the original sentence that had been selected. I know, but one of those would be counted when he said, I'm not going to do that. So I don't know that that counts. Right? If he referenced the 622 to say, I'm not going to just subtract, you're counting that as a reference that we should be troubled by when it's the exact opposite. So you're asking us to look at the sentence as a whole. So just saying that the number 622 was mentioned by someone is not the same, but in any event. It appears that my time is up. Thank you. Counsel, you're reserved two minutes for a bottle. Thank you. Thank you. We'll hear from the government. Good morning. May it please the Court. My name is Tiffany Lee, and I represent the United States. Just to follow up from Judge Bianco's comment, I think the record is complete from the sentencing transcript that the district court was taking pains to evaluate everything anew and specifically started with the new guideline range. You're correct, Judge Bianco. It was actually the government that made reference to 622 because that was the sentence that the government was urging the district court to impose. Indeed, Mr. Stinson was asking during the course of the sentencing proceedings in his submissions that the district court not go above 322. Was the government actually urging 622 months? It was. In the new sentencing, too? It was on the resentencing, just totally on the basis of... How many years is that, Counsel? Your Honor, it's over 50 years. And you think that's a reasonable sentence? Your Honor, based on the conduct that occurred in which Mr. Stinson was convicted and was tried and basically... Did you say 50 years is okay? Your Honor, based on the circumstances of the case, the number of victims, and everything along those lines, we had urged the district court to impose that sentence based on the violence that had been committed by Mr. Stinson and his co-conspirators as part of the crime. We believe that that was a sentence that was sufficient. The trial had lasted many weeks. Not longer than necessary? And not longer than necessary. How old was Mr. Stinson at the time? At the time that he committed it, he was, I believe, in his 20s. He is now 46. So he could have been in prison until his 70s if he had gotten the sentence you recommended. Correct. If he lived that long. Correct. However, the district court did not impose that sentence. And the question here for this Court is whether or not that sentence was reasonable. And as the government has submitted, it was. Basically, the district court considered the Section 350-53A factors and imposed the sentence of 299 months as being reasonable, sufficient, but not greater than necessary. What was the sentence in the first sentencing? 720 months, Your Honor. Is that what he opposed? 720 in the first sentencing? Yes. But this was during the pre-Booker era when the guidelines were mandatory. And also it was driven by a 25-year mandatory consecutive on the 924C. Correct. So he didn't have a choice. Correct. Exactly. That was mandated by what has now been changed since the passage of the FIRST Act. Unless Your Honors have any further questions, the government rests on its brief. Thank you. Thank you, Counsel. Ms. Bertha, you have two minutes. Thank you, Judge Pooler. Looking at the judge's remarks at A234 to A235, this was, I believe, the third or fourth time that the court returned to the math problem, 622 minus 300. And it begins, so how is it? So if you take, I've already considered the battle in Estroza in sentencing originally, the court's saying you can't give him 25 more years consecutive. And if you subtract 300 from the 622 he has remaining, what do you get? The government responds, 322. The court, the top end of the new guidelines. And returning to what Your Honor mentioned earlier, how would it be fair, having considered all these things, to give him more than 322 months? This is an illustration of how the court reached the 322 months. Ultimately, 299 was imposed, and that was because of a 23-month adjustment for a related sentence. But that's how the court arrived at the 322 months, through this mechanism. If we begin with a 720 to Leif in 2004, that was with an offense level that was elevated incorrectly to a 38, and a criminal history category that was a 5 instead of a 4, we then go to the correct numbers. The correct guidelines, even in 2020, 15 years later, we're dealing with criminal history category 4, a total offense level of 34, and a range of 270 to 322. If the court was beginning its analysis by relying on what it had thought was important back in 2004, it should have begun with correct information. And it did not. It began with an incorrectly calculated number. So the sentence that the judge imposed, however, is within the guidelines that your analysis would provide, correct? That's absolutely correct, Judge Pooler. It's our contention, however— You asked for the low end, 270. That's correct. The range is 270 to 322, and you got 299? He got 322 minus an adjustment to 299. But yes, within the guidelines range, actually the high end of the guidelines range in 2020, that we did not object to being—and it was, in fact, the correct guidelines. Considering the two intervening tract reductions, however, had the correct number been in place instead of the 720, something within the correct range, then we would have started out at a lower point than the judge. But essentially it was a 29-month difference, ultimately, that you were asking for 270 and 299 ultimately got imposed, right? Not necessarily if we consider that the judge continually imposed a sentence at the low end of the range each time he did a cracker sentencing. If the judge followed that pattern with the correct number to begin with, then we would have ended up at a lower point, and the judge may have been talking—instead of talking about the 322, may well have been talking about the 270, which was the low end of the range. Thank you. Thank you. Thank you both for a reserved decision.